UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| JONATHAN McPHEE,<br><br>      Plaintiff,<br><br>v.<br><br>SYMPHONY NEW HAMPSHIRE,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. 1:18-cv-00322-LM<br>)<br>)<br>)<br>) |

**DEFENDANT'S OBJECTION
TO PLAINTIFF'S MOTION TO EXCLUDE POLLY KAHN AS AN EXPERT**

NOW COMES Defendant Symphony New Hampshire ("SNH"), by and through its attorneys, Primmer Piper Eggleston & Cramer PC, and objects to Plaintiff Jonathan McPhee's ("McPhee") motion to exclude Polly Kahn as an expert and in support states as follows:

**INTRODUCTION**

1. Polly Kahn's expected expert testimony is relevant to the issues in this case. It is based upon five decades of experience that McPhee felt were significant enough to be concerned that SNH defamed McPhee to Ms. Kahn. *See* Doc. 52. McPhee cannot exclude Ms. Kahn's non-retained expert opinion now simply because McPhee does not like what Ms. Kahn's five decades of experience have revealed. McPhee's motion provides no basis to exclude Ms. Kahn's expected expert testimony and should be denied.

**BACKGROUND**

2. This case relates to the termination of McPhee's contract as an independent contractor of SNH on September 6, 2017 because Music Director McPhee and Executive Director Marc Thayer "had different expectations of their respective roles. Areas of disagreement accrued over the year and the working relationship between the executive director and the music director

1

became increasingly strained." *See* <u>Exhibit A</u>, Kahn Depo. Exhibit 10 (the June 6, 2018 email which McPhee claims defamed him). McPhee has raised claims of wrongful termination, violation of RSA 275-E:2, and defamation. *See* Doc. 52.

3. In connection with his defamation claim, McPhee alleges that in an email "[o]n or about August 5, 2017, Dr. Oot communicated with a recruiter about Mr. McPhee. Dr. Oot falsely stated to the recruiter that the Symphony had fully investigated Mr. McPhee's concerns and found 'no merit' to them. Dr. Oot further stated that Mr. McPhee was behaving poorly only trying to cause problems; he also asked the recruiter not to mention this discussion [sic] Mr. McPhee." Doc. 52 at 3 ¶ 12. The email in question is attached hereto as <u>Exhibit B</u>.

4. McPhee further alleges "[t]his recruiter had previously served as a reference to Mr. McPhee, but after this communication, she did not serve as a reference. There were also verbal discussions in which Dr. Oot similarly discussed Mr. McPhee with the recruiter." Doc. 52 at 3 ¶ 13.

5. McPhee further alleges that "[t]hrough its Board of Directors, the Symphony communicated false and defamatory statements about Mr. McPhee to others, including a recruiter, who understood the defamatory nature of the communications." Doc. 52 at 7 ¶ 35.

6. McPhee further alleges that the alleged defamatory statements "resulted in a loss of reputation for Mr. McPhee with this recruiter and others." Doc. 52 at 7 ¶ 37.

7. The "recruiter" repeatedly referenced in McPhee's Complaint is Polly Kahn. *See* <u>Exhibit B</u>.

8. During the course of her deposition, Polly Kahn offered several opinions of relevance to this case based upon her wealth of experience as a recruiter and leader in the orchestra industry.

9. Among other things, Polly Kahn discussed the "industry norm" for how a music director and executive director generally operate *vis a vis* each other. Exhibit C, Kahn Depo. at 126-27.

10. When Ms. Kahn helped SNH recruit Marc Thayer as SNH's new executive director she was aware that SNH was specifically changing the structure of SNH to professionalize it and more clearly define the respective roles of executive director and music director because the contract that had been in place with the prior executive director Eric Valliere had been "very, very vague as to responsibilities." Exhibit C, Kahn Depo. at 34-38, 126. Ms. Kahn drafted the job description for SNH's new executive director. Exhibit C, Kahn Depo. at 30-31.

11. When asked specifically whether McPhee would be expected to have input on Marc Thayer's budgets, Ms. Kahn explained based on her five decades of experience that "[t]hat is really not the industry norm." Exhibit C, Kahn Depo. at 126-27. She further expounded as to why. *See* Exhibit C, Kahn Depo. at 127.

12. Ms. Kahn further testified that when Dr. Oot reached out to her in July of 2017 it was specifically to "ask [her] questions about Symphony norms" and "[w]hat were standard operating procedures for orchestras of the size of Symphony New Hampshire." Exhibit C, Kahn Depo. at 41-42.

13. Ms. Kahn was further asked in her deposition by McPhee's counsel to "describe the current market for a music director position with an orchestra, say, the size of Symphony New Hampshire." Exhibit C, Kahn Depo. at 147-48. Ms. Kahn explained that

> there is nothing more competitive in the arts world than that for music directors. And when there is a search for a new music director, no matter what the size of the orchestra, from the very smallest budget orchestra, of which the Symphony New Hampshire is very close to that level, to the most exalted of them, Boston Symphony or whatever, they will result in hundreds of applications, generally between 2- and 400 applications for that position.

3

Exhibit C, Kahn Depo. at 147-51.

14. Ms. Kahn described the market as "fiercely competitive" and "a very, very rich array of candidates always comes forward." Exhibit C, Kahn. Depo. at 150.

15. Ms. Kahn also testified that McPhee's initiation of this lawsuit and "[t]he fact that Jonathan sadly has been associated with two departures from musical entities – unfortunately it comes home to roost with Jonathan . . . in a hugely competitive environment where one is looking for the best possible match through a whole host of skills that are increasingly very important in hiring, not just somebody being a good conductor, but also being a good collaborator, excellent in the community, able to get along with anyone, these things matter a great deal now." Exhibit C, Kahn Depo. at 161-62.

16. Ms. Kahn also testified that the fact that McPhee left the Boston Ballet and left SNH and filed a lawsuit against SNH made it "probably unlikely" that McPhee would become a finalist candidate in any music director search or in getting a new music director position. Exhibit C, Kahn Depo. at 166-67.

## ARGUMENT

### I. Polly Kahn's Opinions Are Relevant.

17. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. "Irrelevant evidence is not admissible." FED. R. EVID. 402. "To assist the jury, the testimony must be relevant in the sense that the opinion 'likely would assist the jury to understand or determine a fact in issue.' *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998); s*ee also* FED. R. EVID. 702 ("the expert's scientific, technical, or other

4

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue").

### A. The Relevance of Polly Kahn's Expertise With the Typical Operation of Orchestras.

18. McPhee challenges the relevance of expert testimony Ms. Kahn may offer on the operation of orchestras and whether McPhee was attempting to usurp Marc Thayer's role as executive director by various actions he took leading up to his termination. Doc. 54-1 at 3. McPhee predicts that SNH might argue that the tension created by McPhee usurping Marc Thayer's role as executive director "led to McPhee's termination." Doc. 54-1 at 3.

19. McPhee claims "[i]t is not necessary for the jury to understand 'the operation of orchestras' to understand this theory, because both McPhee and Thayer's employment contracts set out their duties." (*Id.*) McPhee then claims "[b]oth contracts state that each reports to the Board of Directors." (*Id.*)

20. McPhee's attempt to exclude Ms. Kahn's expert testimony on this issue demonstrates why such testimony is needed in this case. Ms. Kahn testified in her deposition that when she was brought on to recruit a new executive director for SNH, SNH was working to re-structure and clarify the respective roles of the executive director and the music director to professionalize SNH. *See* Exhibit C, Kahn Depo. at 34-38, 126.

21. Ms. Kahn's potential expert testimony is relevant because it explains why tension would have arisen between the two men. If the typical operation of orchestras separated functions between the music director and the executive director in a manner that McPhee was acting contrary to, it would explain why Marc Thayer and McPhee "butted heads" over their respective roles and responsibilities. Indeed, in his May 26, 2017 email to each SNH Board member, McPhee complained that "Marc [Thayer] has inserted himself in reversing decisions that I have made

5

regarding personnel that explicitly lie with the Music Director, not the Executive Director…" Exhibit D, McPhee Depo. Exhibit 44. McPhee is free to argue that the terms of his contract justified his actions at the time, but it does not change the fact that Marc Thayer would have reacted negatively to McPhee operating in a manner that was inconsistent with how symphonies typically operate.

22. The reason for McPhee's firing is central to this case, even under McPhee's slanted presentation of the issues, *see* Doc. 54-1 at 2, and Ms. Kahn's expert opinion on the issue is accordingly highly relevant.

23. Additionally, Ms. Kahn's expertise on the manner in which symphonies typically operate is highly relevant to McPhee's defamation claim because Ms. Kahn specifically testified that when Dr. Oot reached out to her about the issues SNH was experiencing with McPhee and Marc Thayer he was specifically seeking her expertise on the issue. *See* Exhibit C, Kahn Depo. at 41-42.

24. As noted in prior pleadings, the determination of whether statements are defamatory must look to the whole context of the publication at issue and Ms. Kahn's expertise is an important part of that analysis. Among other things, it supports Dr. Oot's claim of conditional privilege.

25. The manner in which symphonies typically operate is also clearly beyond the "ken" of the average juror who is not expected to be knowledgeable about the inner workings and management of symphonies. *See U.S. v. Valle*, 72 F.3d 210, 215 (1st Cir. 1995).

   **B. The Relevance of Polly Kahn's Expertise As a Recruiter.**

26. As noted above, McPhee's own Complaint describes Polly Kahn as a "recruiter" because of her extensive experience recruiting for symphonies. McPhee also testified that Polly

Kahn was one of his top two references in applying for positions with symphonies. Exhibit E, McPhee Depo. Vol. II at 185-88. McPhee now challenges the relevance of Ms. Kahn's expected expert testimony that McPhee irredeemably destroyed his reputation in the symphony community by filing his lawsuit against SNH and now has no chance of securing employment as a Music Director as a result.

27.   The planned expert testimony on this issue is relevant to whether SNH's alleged defamatory statements caused McPhee any damages because by the time McPhee actually brought his claim for defamation he had already completely destroyed his reputation in the relevant community by filing his lawsuit against SNH.

28.   With respect to the alleged August 5, 2017 defamatory email, McPhee did not actually file his motion to amend his Complaint to add that count until December 10, 2018, well after when he filed his lawsuit against SNH. Accordingly, at the time he moved to amend he had already destroyed his reputation and could not obtain damages for any alleged defamation by that email.

29.   With respect to the alleged defamatory statements made on June 6, 2018, Polly Kahn's expert testimony is even more relevant. June 6, 2018 was after McPhee filed his lawsuit and, according to Ms. Kahn's expert testimony, completely destroyed his reputation in the relevant community. As a result, when SNH made certain statements on June 6, 2018 in defense of its position with respect to this lawsuit it could not have possibly damaged McPhee with any alleged defamation because McPhee had already essentially rendered himself undefamable in the "fiercely competitive" market for music directors by filing his lawsuit. Exhibit C, Kahn Depo. at 150.

30.   The planned expert testimony is highly relevant, and indeed dispositive as to McPhee's defamation claim since it precludes any award of damages on that claim. McPhee

elected not to retain any experts to support his claims for defamation damages and cannot be heard to complain now simply because the non-retained expert that is available on that issue holds an expert opinion McPhee does not want to hear.

### C. The Relevance of Polly Kahn's Expertise as to the Availability of Music Directors Versus Executive Directors In the Relevant Talent Pool in the Industry.

31. As noted above, Ms. Kahn testified in her deposition that the talent pool for music directors is "fiercely competitive" and any opening draws literally hundreds of qualified applicants. Exhibit C, Kahn Depo. at 150.

32. This potential expert testimony supports the fact that SNH would fire McPhee (its music director) who could not get along with his executive director instead of the other way around because the talent pool for music directors is much deeper than the talent pool for executive directors. Even if both the music director and the executive director were equally blameworthy for the breakdown in the relationship SNH's business judgment justifies termination of McPhee over Marc Thayer because of the available talent pool for their respective positions.

33. Ms. Kahn is expected to testify as to her expert opinion in that regard based on her extensive experience recruiting in that field. It is unclear whether McPhee's motion actually challenges her planned expert testimony on that issue, but to the extent it does such testimony is relevant as to the decision by SNH to terminate McPhee.

34. Faced with a dispute between its music director and its executive director, SNH will argue it had to choose to terminate one of the two individuals, knowing that it is far easier to find a music director to replace a terminated music director than it is to find an executive director to replace a terminated one.

35. The process of hiring Marc Thayer and the difficulty of hiring an executive director generally are relevant facts SNH is entitled to present to the jury as the basis for its termination decision. They are also incidentally part of Ms. Kahn's expected fact testimony in this case.

## II. Polly Kahn's Above-Stated Expected Expert Opinions Are Admissible Under Federal Rule of Evidence 702.

### A. Polly Kahn Is Qualified to Render the Above-Stated Expected Expert Opinions.

36. Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert *by knowledge, skill, experience, training, or education* may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added). "Federal Rule of Evidence 702 assigns to the district court 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 [] (1993)." *Smith v. Dorchester Real Estate, Inc.*, 732 F.3d 51, 64 (1st Cir. 2013).

37. Here, Ms. Kahn has extensive experience working for music-related entities that spans almost five decades. *See* Doc. 54-1 at 5. As McPhee repeatedly acknowledged and alleged in his Complaint, Ms. Kahn is a "recruiter" in the music field. *See* Doc. 52. As McPhee's motion correctly acknowledges, Ms. Kahn has "worked for symphonies and related entities for many years."[1] Doc. 54-1 at 5. Ms. Kahn's wealth of experience as a recruiter in the field where McPhee would seek employment clearly qualifies as "knowledge," "experience," "training," and

---

[1] As indicated in her resume, Ms. Kahn was Vice President for Learning and Leadership Development for the League of American Orchestras, where she oversaw the League's artistic, learning, governance, and leadership development programs and services for the League's 800 member orchestras. *See* Doc. 54-2.

9

"education" that more than qualify her to render the opinions set forth above.  *See* Fed. R. Evid. 702.

38.     Ms. Kahn's specialized knowledge in the music and symphony recruitment field rests on a "reliable foundation" comprised of five decades of direct experience.  *Smith*, 732 F.3d at 64.  Simply put, she knows what a recruiter would look for and no recruiter would find McPhee desirable given his departure from SNH and the Boston Ballet and subsequent lawsuit.  *See* Part I-B.  Ms. Kahn further knows that if a symphony faces a dilemma where the music director and executive director refuse to get along it is far easier to replace the music director because there are hundreds of applicants eager to replace him.  Ms. Kahn knows the same is not true for an executive director, again based upon her five decades of experience in the field and her direct experience in recruiting a new Executive Director for SNH in 2016.

39.     Finally, Ms. Kahn's extensive experience makes her more than qualified to know the inner workings of typical symphonies because she has lived and breathed it for five decades.  Few proffered experts could claim such breadth of expertise and what Ms. Kahn displays more than qualifies.

40.     McPhee seeks to disqualify Ms. Kahn by asserting she is not a "vocational expert," but McPhee's own description of the expertise associated with such an expert demonstrates why that descriptor is not applicable to Ms. Kahn's proffered opinions here.  The description laid out in McPhee's motion discusses areas about which Ms. Kahn has not been advanced as an expert and for which SNH would not present her expertise.

41.     Ms. Kahn is offered as an expert based on her experience as a recruiter and her experience with the inner workings of symphonies.  McPhee cannot challenge those bases because his Complaint explicitly describes Ms. Kahn in that fashion.  McPhee accordingly offers no

arguments against Ms. Kahn's qualifications in those regards and accordingly this Court should deny McPhee's attempt to disqualify Ms. Kahn's expertise.

42. With respect to McPhee's assertion that Ms. Kahn does not have specialized knowledge because her "industry standards are based on only her own knowledge," McPhee is again mistaken. *See* Doc. 54-1 at 5.

43. First, McPhee has no basis to assert such a statement. Ms. Kahn is a non-retained expert and accordingly faces no requirement to provide a report on her expert opinions. Ms. Kahn has undoubtedly reviewed publications and other materials in her five decades of experience that support her conclusion as to industry standards.

44. Second, knowledge of industry standards based on personal knowledge acquired over five decades of experience is "specialized knowledge." Direct hands on experience in the actual field is more than adequate to support an expert opinion of industry standards and it is perhaps more trustworthy than a mere academic review of literature without real world experience.

45. Ms. Kahn's expertise is demonstrated further by the simple fact that when McPhee damaged his prior relationship with the Boston Ballet because he could not get along with their artistic director he called Ms. Kahn *for her expertise on the subject and how best to deal with his impending departure.* Exhibit C, Kahn Depo. at 104-05.

46. McPhee then pivots 180 degrees to claim that Ms. Kahn's opinion concerning "'standard operating procedures' are simply common sense and are not based on any scientific or specialty standard or knowledge." Doc. 54-1 at 6. McPhee again is mistaken. Whether or not some of Ms. Kahn's opinions may be common sense, it is important for the jury to know that they are in fact industry standards.

47.     More fundamentally, the opinions discussed above and not included in McPhee's slanted list are not common sense and are based on Ms. Kahn's five decades of extensive experience. They must not be excluded.

### B. Polly Kahn's Opinions Are Based on Sufficient Facts and Data.

48.     McPhee claims that Ms. Kahn's potential expert testimony should be excluded as based on insufficient information because "Kahn's only information about McPhee or operations at SNH came from Oot" and "SNH has admitted that it is disputed as to whether Oot harbored ill will towards McPhee." Doc. 54-1 at 6. This argument is without merit.

49.     First, SNH's "admission" made in the context of summary judgment was that with the *possible* exception of Dr. Oot it was undisputed that each and every Director of SNH harbored no ill will towards McPhee. *See* Doc. 23-1 at 8. The fact that SNH acknowledges that McPhee *claims* Dr. Oot harbored ill will towards McPhee (i.e. it is *disputed*) is not an admission that Dr. Oot actually did harbor any ill will. To the contrary, Dr. Oot testified that he did not harbor ill will towards McPhee and contemporary evidence shows he did not. Indeed, Dr. Oot attempted to try and work with McPhee but McPhee was incapable of working constructively with Dr. Oot on a path forward. The fact that SNH has acknowledged the issue is "disputed" means that SNH does **not** agree with McPhee's position that Dr. Oot harbored ill will because he did not.

50.     Second, as the above discussion demonstrates, the proffered expert opinions of Ms. Kahn have nothing to do with information provided to Ms. Kahn by Dr. Oot. As McPhee's motion acknowledges, Ms. Kahn's "industry standards are based on only *her* own knowledge" based on her work for "symphonies and related entities for many years." Doc. 54-1 at 5 (emphasis added). Ms. Kahn knows what she knows about industry standards based on her own five decades of experience. Ms. Kahn knows what she knows about McPhee's self-inflicted irreparable damage

12

to his reputation because she (a) knows how to google, (b) knows that others in the industry also know how to google and will in fact google McPhee before considering whether to hire him, and (c) knows that in her industry that will be fatal to his prospects. *See* Exhibit C, Kahn Depo. at 148-50.

### C. **Polly Kahn's Opinions Do Not Pose a Substantial Risk of Confusing the Jury.**

51. McPhee claims Ms. Kahn's potential expert testimony poses a substantial risk of confusing the jury because he claims that "some of Kahn's opinions regarding 'standard operating procedures' are contrary to New Hampshire law." Doc. 54-1 at 7.

52. The passages McPhee quotes from Ms. Kahn's deposition do not contradict New Hampshire law and do not accurately reflect what Ms. Kahn actually testified to. McPhee claims New Hampshire law gives him "the right and obligation to raise his concerns" but Ms. Kahn did not testify to the contrary. Doc. 54-1 at 8.

53. In fact, when specifically asked in her deposition (almost immediately after the lengthy passage quoted by McPhee) whether she had a "general sense that anyone who works for Symphony New Hampshire is supposed to be welcomed to raise concerns to the board" Ms. Kahn answered: "That would be standard operating procedure in any organization." Exhibit C, Kahn Depo. at 51-52.

54. Ms. Kahn did not opine that it would not be appropriate for McPhee to raise concerns about finances so there is simply no risk of confusion on that issue.

### CONCLUSION

55. For the reasons set forth above, Ms. Kahn's expected expert testimony should not be excluded and McPhee's motion should be denied. Ms. Kahn's relevant opinions, based on

13

nearly five decades of experience, are based on ample facts and data and pose no risk of confusing the jury.

56. Pursuant to Local Rule 7.1, no memorandum of law is necessary because all legal citations are contained herein.

WHEREFORE, Defendant SNH respectfully requests that this Honorable Court:

A. Deny Plaintiff's motion to exclude Polly Kahn's expert testimony; and

B. Grant such other relief as the Court deems just.

Respectfully submitted,

SYMPHONY NEW HAMPSHIRE,

By its attorneys,

PRIMMER PIPER EGGLESTON & CRAMER PC,

Dated: September 20, 2019    By:  */s/ Thomas J. Pappas*
Thomas J. Pappas, Esq., (N.H. Bar No. 4111)
Matthew J. Delude, Esq. (N.H. Bar No. 18305)
P.O. Box 3600
Manchester, NH 03105-3600
(603) 626-3300
tpappas@primmer.com
mdelude@primmer.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has this day been forwarded via the Court's Electronic Case Filing System to Lauren S. Irwin, Esq., Heather M. Burns, Esq. and Brooke Lois Lovett Shilo, Esq.

Dated: September 20, 2019    By:  */s/ Thomas J. Pappas*
Thomas J. Pappas, Esq., (N.H. Bar No. 4111)

4000929.3