UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JONATHAN McPHEE, <br><br> Plaintiff, <br><br> v. <br><br> SYMPHONY NEW HAMPSHIRE, <br><br> Defendant. | Civil Action No. 1:18-cv-00322-LM |

**OBJECTION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE POLLY KAHN FROM OFFERING TESTIMONY BASED ON JONATHAN MCPHEE'S FILING OF THIS LAWSUIT**

NOW COMES Defendant Symphony New Hampshire ("SNH"), by and through its attorneys, Primmer Piper Eggleston & Cramer PC, and objects to Plaintiff Jonathan McPhee's ("McPhee") motion *in limine* to exclude Polly Kahn from offering testimony based on McPhee's filing of this lawsuit (the "Motion") and in support states as follows:

**INTRODUCTION**

1. Polly Kahn's expected testimony is relevant to the issues in this case. McPhee cannot rely on a presumption of damages when such damages are highly unlikely due to McPhee's own actions. Additionally, McPhee's reliance on the standard jury instruction for defamation is misplaced due to the unique chronology of this case, which bars McPhee from recovering damages.

**BACKGROUND**

2. This case relates to the termination of McPhee's contract as an independent contractor of SNH on September 6, 2017. McPhee has raised claims of wrongful termination, violation of RSA 275-E:2 and defamation. *See* Doc. 52.

1

3. McPhee initiated this action by Complaint filed in the state court on April 6, 2018. Doc. 1-1.

4. On December 10, 2018, McPhee moved to amend his complaint asserting a cause of action for defamation. *See* Doc. 10-1. The proposed amended complaint alleged that "[o]n or about August 5, 2017, Dr. Oot communicated with a recruiter about Mr. McPhee" and made false and defamatory statements about McPhee to the recruiter (Polly Kahn) and others. *See* Doc. 10-1 at 3.

5. Many months after that and following summary judgment pleadings on his defamation claim, on June 12, 2019, McPhee moved to file a proposed second amended complaint and/or supplement his amended complaint. *See* Doc. 28-3.

6. McPhee's proposed second amended complaint alleged that "[o]n June 6, 2018, SNH's Board President, Robert Oot, sent an e-mail to SNH Trustees, former SNH Trustees, SNH donors, members of Friends of SNH, supporters of SNH, and friends that made [] false and defamatory statements about the Plaintiff." Doc. 28-3 at 5. The e-mail was sent two months *after* McPhee filed his lawsuit.

7. During the course of her deposition, Ms. Kahn offered several opinions of relevance to this case and McPhee's allegations, including the opinion that is the subject of the Motion.

8. Ms. Kahn was asked in her deposition by McPhee's counsel to "describe the current market for a music director position with an orchestra, say, the size of Symphony New Hampshire." Doc. 81-3 at 18-19. Ms. Kahn explained that:

> there is nothing more competitive in the arts world than that for music directors. And when there is a search for a new music director, no matter what the size of the orchestra, from the very smallest budget orchestra, of which the Symphony New Hampshire is very close to that level, to the most exalted of them, Boston Symphony or whatever, they will result in hundreds of applications, generally between 2- and 400 applications for that position.

Doc. 81-3 at 18-23.

9. Ms. Kahn described the market as "fiercely competitive" and "a very, very rich array of candidates always comes forward." Doc. 81-3 at 22.

10. Ms. Kahn also testified that McPhee's initiation of this lawsuit and "[t]he fact that Jonathan sadly has been associated with two departures from musical entities – unfortunately it comes home to roost with Jonathan . . . in a hugely competitive environment where one is looking for the best possible match through a whole host of skills that are increasingly very important in hiring, not just somebody being a good conductor, but also being a good collaborator, excellent in the community, able to get along with anyone, these things matter a great deal now." Doc. 81-3 at 24-25.

11. Ms. Kahn also testified that the fact that McPhee left the Boston Ballet and left SNH and filed a lawsuit against SNH made it "probably unlikely" that McPhee would become a finalist candidate in any music director search or in getting a new music director position. Doc. 81-3 at 26-27.

## ARGUMENT

### I. Polly Kahn's Expected Testimony Is Relevant.

12. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. "Irrelevant evidence is not admissible." FED. R. EVID. 402. "To assist the jury, the testimony must be relevant in the sense that the opinion 'likely would assist the jury to understand or determine a fact in issue.'" *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998).

13. McPhee challenges the relevance of Ms. Kahn's expected expert testimony that McPhee irredeemably destroyed his reputation in the orchestra community by filing his lawsuit against SNH and now has no chance of securing employment as a music director as a result.

14. Ms. Kahn's expected testimony is relevant to whether SNH's alleged defamatory statements caused McPhee any damages because by the time McPhee actually brought his claim for defamation he had already destroyed his reputation in the relevant community by filing his lawsuit against SNH.

15. With respect to the alleged August 5, 2017 defamatory e-mail, McPhee did not file his motion to amend his complaint to add a defamation claim until December 10, 2018, well after he filed his lawsuit against SNH. *See* Doc. 10. Accordingly, at the time McPhee moved to add a defamation claim, he had already destroyed his reputation and could not obtain damages for any alleged defamation by the August 5, 2017 e-mail.

16. With respect to the alleged defamatory statements made on June 6, 2018, Ms. Kahn's expected testimony is also relevant. June 6, 2018 was after McPhee filed his lawsuit and, according to Ms. Kahn's expected testimony, destroyed his reputation in the relevant community. As a result, when SNH made certain statements on June 6, 2018 in defense of its position with respect to this lawsuit, it could not have possibly damaged McPhee with any alleged defamation because McPhee had already essentially rendered himself undefamable in the "fiercely competitive" market for music directors by filing his lawsuit. Doc. 81-3 at 22.

17. The planned testimony is highly relevant and indeed dispositive as to McPhee's defamation claim since it precludes any award of damages on that claim.

18. The only basis the Motion provides for exclusion on relevancy grounds is McPhee's inaccurate statement of the law. McPhee claims that the statements "injured McPhee with respect

to his trade or business" and "[w]hen that is the case, 'no proof of specific damages is required. The plaintiff is entitled to recover all damages which would normally result from such a defamation, such as harm to reputation.'" Doc. 64 at 2 (quoting 1-24 New Hampshire Civil Jury Instruction 24.12 (2018) (citing *Chagnon v. Union Leader Corp.*, 103 N.H. 426, 441 (1961)).

19. McPhee is mistaken. While *Chagnon* did hold that a plaintiff who proves libel *per se* "can recover as general damages all damages which would normally result from such a defamation, such as harm to his reputation," that does not relieve a plaintiff from proving that he was actually damaged. *Chagnon*, 103 N.H. at 441. If McPhee can prove libel *per se* he may not need to "prove these damages, specifically," but he does still have to prove the alleged defamatory statements actually caused him damage. *Id.*

20. A recent decision from this Court provides a clear explanation of New Hampshire law on this issue. As this Court explained, "[w]hile New Hampshire's common law of defamation relieves [a plaintiff] of the burden of proving her damages specifically, *she still must prove her damages*." *Merullo v. Greer*, No. 11-cv-116-SM, 2012 WL 832832, at *3 (D.N.H. Feb. 10, 2012) (emphasis added). "*Chagnon* and *Lassonde* do not free [a plaintiff] from having to prove damages; they simply allow her to do so generally rather than specifically." *Id.*

21. Ultimately, "[w]ithout *any* evidence of the degree to which [a plaintiff's] reputation has been harmed by [another's] defamatory statements, the court has no basis for determining a reasonable amount of compensation, and '[t]he law is clear that damages cannot be awarded on the speculation, passion, or guess of the [factfinder].'" *Id.* (quoting *Laramie v. Stone*, 160 N.H. 419, 430 (2010)).

22. McPhee is incorrect, as a matter of law, that he does not have to prove his damages and the necessary corollary to that is that "whether McPhee's filing of a lawsuit actually damaged

5

his reputation" *is* a fact at issue in this case and relevant to McPhee's ability to prevail on his defamation claim. If filing his lawsuit against SNH on April 6, 2018, after having previously departed the Boston Ballet rendered McPhee essentially undefamable – as Ms. Kahn's testimony supports – McPhee can show no damages due to the June 6, 2018 e-mail that was sent after he filed suit. Similarly, with respect to the earlier pre-suit e-mail, McPhee is likewise barred from establishing damages because when he brought his defamation claim he had already destroyed his reputation.

23. The evidence is relevant and cannot be excluded under Fed. R. Evid. 401 or 403.

## II. Polly Kahn's Testimony Is Not a Legal Argument and Does Not Risk Misleading the Jury Because It is Consistent With New Hampshire Law.

24. McPhee contends that Ms. Kahn's testimony "amounts to a legal argument and risks misleading the jury" because he claims it is not consistent with New Hampshire law. Doc. 64 at 2. McPhee is again mistaken.

25. As McPhee correctly recites, New Hampshire law provides that a plaintiff may be awarded:

> those damages *proven to have resulted* and that will result in the future *as the natural and direct consequence of defendant's defamatory act*. These damages include harm to personal reputation, harm to business reputation, credit reputation, loss of business *and any other damage proven to have resulted as the normal and direct consequence of the defamation*.

Doc. 64 at 2-3 (quoting 1-24 New Hampshire Civil Jury Instruction 24.12 (2018)) (emphasis added).

26. McPhee then incorrectly claims that Ms. Kahn's expected testimony would risk confusing the jury "because her testimony would conflict with the law given to the jury with respect to defamation damages." Doc. 64 at 3.

6

27. There is no conflict. In this case, there are no damages that "have resulted" or "will result in the future as the natural and direct consequence of defendant's [alleged] defamatory act" because before McPhee brought his defamation claims he removed the possibility of further destroying his reputation by filing this lawsuit. Ms. Kahn's testimony based on five decades of experience is that by filing this lawsuit for wrongful termination and whistleblower allegations, McPhee essentially terminated his chances of being retained as a music director for an orchestra. It is simply too competitive of an industry for music directors and when McPhee made the decision to sue SNH he effectively self-retired from the industry.

28. Given that fact, which SNH would prove to the jury through Polly Kahn's testimony, SNH cannot be held liable for any defamation damages even if McPhee could succeed in convincing the jury that the statements SNH has made were somehow defamatory.

29. The probative value of the expected testimony is high. The danger of misleading the jury is non-existent. The Motion must be denied.

30. Pursuant to Local Rule 7.1, no memorandum of law is necessary because all legal citations are contained herein.

WHEREFORE, Defendant SNH respectfully requests that this Honorable Court:

A. Deny Plaintiff's motion to exclude Polly Kahn's expected testimony based on McPhee's filing of this lawsuit; and

B. Grant such other relief as the Court deems just.

Respectfully submitted,

SYMPHONY NEW HAMPSHIRE,

By its attorneys,

PRIMMER PIPER EGGLESTON & CRAMER PC,

Dated: September 26, 2019     By:  */s/ Thomas J. Pappas*
                                    Thomas J. Pappas, Esq., (N.H. Bar No. 4111)
                                    Matthew J. Delude, Esq. (N.H. Bar No. 18305)
                                    P.O. Box 3600
                                    Manchester, NH 03105-3600
                                    (603) 626-3300
                                    tpappas@primmer.com
                                    mdelude@primmer.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing OBJECTION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE POLLY KAHN FROM OFFERING TESTIMONY BASED ON JONATHAN MCPHEE'S FILING OF THIS LAWSUIT has this day been forwarded via the Court's Electronic Case Filing System to Lauren S. Irwin, Esq., Heather M. Burns, Esq. and Brooke Lois Lovett Shilo, Esq.

Dated: September 26, 2019        By: */s/ Thomas J. Pappas*
                                      Thomas J. Pappas, Esq., (N.H. Bar No. 4111)